FILED
DISTRICT CLERK OF
JEFFERSON CO TEXAS
6/1/2015 4:28:07 PM
JAMIE SMITH
DISTRICT CLERK
B-194415

## CAUSE OF ACTION B194-415

| | | |
|---|---|---|
| C'BRIONNE HENDRIX, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| | § | |
| BEAUMONT INDEPENDENT | § | JEFFERSON COUNTY, TEXAS |
| SCHOOL DISTRICT, FORMER | § | |
| SUP'T. TIMOTHY CHARGOIS, | § | |
| IEKA WILRIDGE, LEIGH | § | 60th JUDICIAL DISTRICT |
| LOWELL, and PATRICIA | § | |
| LAMBERT | § | |
| | § | TRIAL BY JURY |
| Defendants. | § | |

## PLAINTIFF'S SECOND AMENDED PETITION AND APPLICATION FOR MANDATORY INJUNCTION AND DAMAGES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, C'Brionne Hendrix ("Hendrix"), by her Second

Amended Petition, complaining of Defendants, Beaumont Independent

School District ("BISD"), former Superintendent Timothy Chargois

("Chargois"), former Assistant Superintendent Patricia Lambert ("Lambert"),

Ieka Wilridge ("Wilridge"), and Leigh Lowell ("Lowell").

Timothy Chargois was at all times material hereto the delegated

1

policymaker of BISD in the matters of student academic rankings.

Chargois designated Lambert as his representative to be BISD's policymaker in personnel staffing actions (other than the creation of new budgetary positions which the BISD Board of Education ostensibly reserved for itself,) student grades and academic rankings at Central Medical Magnet High School. At all material times hereto, Lambert altered and/or delegated authority to alter student's courses to illegally affect students' academic class standings to Ieka Wilridge (Lead Counselor), Leigh Lowell (Medical Magnet Coordinator), and Lambert's sister, Christine Martin (Registrar).

## JURISDICTION AND VENUE

This court has jurisdiction, and venue is properly in Jefferson County.

The parties have answered through Texas Association of School Board Counsel of School Attorneys at the request BISD's outside counsel, Melody Chappell, and have made appearance herein.

## BACKGROUND AND FACTS

The background of this case lies in the misconduct of BISD, Chargois, Lambert, Wilridge, and Lowell.

Wilridge and Lowell assisted Lambert and participated in the

2

alteration of student grades to affect student rankings, which denied to

Plaintiff the class ranking of Salutatorian or second in her class, and

financial scholarships which accompanied that accademic standing.

Chargois for himself and as BISD knew of the grade inflations and

alterations of student grades by Lambet, Wilridge, and Lowell, and yet

ratified their misconduct.

Lambert's rapid rise to power in BISD resulted as the result of her

having been hired by former Superintendent Butch Thomas and Director of

Human Resources Sybil Comeaux Collins Lambert3, "Lambert" although she

admitted to being a felon in New Orleans, Louisiana for having engaged in

extortion from subordinate teachers while an administrator in the public

schools of New Orleans. Reportedly , the admission was only the result of

Lambert having been tape recorded in the criminal act.

Lambert, as Patricia Adams Collins, applied for employment by BISD

on or about June 3, 2002.  In her Application, Lambert stated her name as

"Patricia Adams Collins."  However, the "Collins" surname was stricken and

she thereafter became known as "Adams-Collins" so that discovery of facts

about Lamberts past would be made more difficult.  As noted, when serving as an administrator in New Orleans's public schools, Lambert had been indicted and/or charged with criminally extorting money from two educators in the Orleans parish who were subordinate to her.

Her attorney in that matter was able to negotiate a plea bargain and Lambert moved to Texas.  Since this lawsuit was filed, Lambert has been again indicted-this time in federal court for various criminal acts committed by her as Chargois' assistant.  It is believed that Lambert performed the concealment from the public of her criminal past on advice of senior BISD officers.

In her Application to BISD, Lambert concealed facts about her past involvement with the criminal justice system.

Specifically, the application asked, "*Have you ever been convicted of or pled guilty or no contest (nolo contendere) to a felony or a crime involving moral turpitude, including but not limited to felony crimes involving alcohol, or felony or misdemeanors involving controlled substances and or children.*"  Lambert checked the "No" box, all the while

knowing that she had pled to the crime of extortion in New Orleans which affected her removal from an Administrative position and employment by the New Orleans School District.

Sybil Comeaux, Director of Human Resources facilitated the employment of Lambert,it is believed with knowledge of Lamberts' sordid past.

Lambert progressed rapidly upward within the BISD organization and within four years she had moved from a teacher, to Principal of Central High School; then, within six years, Chargois and the BISD Boasrd elevated Lambert  to the rank of Assistant Superintendent, with upward leaps in title, responsibility and salary.

In the process, Lambert facilitated the employment by BISD of her family and close supporters into key positions,with the knowledge of BISD.

In 2006, Lambert maneuvered herself into the position of Principal of the Central High School ("Central").

Central High School had previously been named Beaumont High School but was changed to Charlton Pollard High School and then to Central High School in 1986 or 1987.

Central High School was designed as a magnet school with a health service curriculum designed to attract high achieving students.

Jasmine and Nicholas are the children of Mr. and Mrs. Albert Rhone. Both Jasmine and Nicholas attended Central Medical Magnet High School. Jasmine graduated in 2011, and was the leading contender for Salutatorian until January 2011.

Counselor Wilridge, preferred that another student receive the Salutatorian designation. Student grades were changed to permit Wiridge's favored student to become Salutatorian and Jasmine graduated third in her class.

The Rhone family and Lambert attended the same church. The Rhone family rrealized that Jasmine was unfairly denied the class rank, and spoke to Wilridge about their concerns.

The Rhone family and Superintendent Chargois were reportedly close and Nicholas referred to Chargois as his "Uncle".

## MAKING IT UP TO THE RHONES

A plan was laid in place by Defendants to award a distinguished class ranking to Jasmine's brother, Nicholas, while allowing him to participate in

football as well, so that Nicholas would graduate in the 2013 senior class in the second position.

The problem with Defendants' plan was that Plaintiff Hendrix and Nicholas were "neck and neck" in their competitive race to the top.

Lambert directed Wilridge on how to place Nicholas in second place.

Lambert's Plan to promote Nicholas' academic rank was put in effect in Fall 2011, shortly after Jasmine had been denied the second place.

Nicholas was taking a dual credit English class at Lamar University, and because of his difficulties in the course, ~~he~~ was advised by Central Counselor to withdraw from the class before the "official drop date" expired.

Nicholas withdrew from the dual credit class.  He was then enrolled in an "Advanced Placement" ("AP") English class at Central High School at the end of the third six weeks of the Fall Semester of the 2011-2012 school year. The effect was that Nicholas' grades at the end of the First Semester were based on less than a full semester's exposure to or graded performance in the AP English course and he was awarded grades for a Theatre Arts class.

At the end of the Fall Semester, Plaintiff was ranked number 2 in her class, and Nicholas was ranked number 3.

At the beginning of the Spring Semester in 2012, Central's Lead Counselor, Ms. Bill, was responsible for advising both Nicholas and Plaintiff. At that time, Nicholas was not taking any dual credit classes, but was enrolled in four AP classes and another Career Technical Education ("CTE") class which counted as two classes. This gave him a total of six out of seven periods with weighted credit.

At the same time, Plaintiff was enrolled in two dual credit classes which were equivalent in credit to an advanced placement class, 2 AP classes, and a CTE class, which counted as two classes.

One of Plaintiff's dual credit classes at Lamar in the Spring of 2012 was English. Plaintiff was enrolled in the class along with two other Central students, and all three students were having difficulties.

Ms. Bill became suddenly and fatally ill on April 6, 2012, and was unavailable to help Plaintiff and her classmates. Plaintiff's mother was instructed to take over Ms. Bill's duties. Plaintiff's mother then contacted the representative of Lamar University and was advised to suggest

8

withdrawal of Plaintiff and the other two students from the dual credit English class.

The Associate Dean of the College of Arts and Sciences at Lamar University approved the withdrawals without penalty on May 2, 2012.

Plaintiff and her classmates were placed in an AP English class at Central, taught by Stephanie Alfred.  Ms. Alfred examined each of the students to insure the students were qualified for placement at the stage of their entry into the course.

On June 4, 2012, Plaintiff's report card reflected that she had earned a 94 (4th six weeks), a 94 (5th six weeks), and a 100 (6th six weeks) but was refused the additional ten points that had been previously awarded to students taking dual credit courses. Plaintiff's mother was called to the school to receive another and different report card for Plaintiff.

Plaintiff's mother spoke with Wilridge and Lambert.

Lambert told Plaintiff's mother that only the Fall Semester students, i.e. Nicholas' class, would receive the promised extra 10 points, and that the following semester's class, Plaintiff's class, would be denied the bonus points.

Lambert then told Plaintiff's mother that she had lowered Plaintiff's teacher-assigned grades at Lamar University despite the Lamar Associate Dean's contrary ruling in the matter.

Further, Lambert had unilaterally reduced Plaintiff's scores of 94 in the 4th, and 5th, to 70s, giving Plaintiff an average lower than Nicholas.  Plaintiff appealed the lowering of her teacher assessed grades to then Assistant Superintendent Chargois.

Plaintiff's mother explained to Chargois that of the three students in dual credit classes at Lamar with Plaintiff during the Spring semester, one child had a score of "68" and her grade was increased by Lambert to "70." The second child had a score of "52" and her grade was increased by Lambert to "70".

Plaintiff, who had a "before-dropping" score of "69", was treated less equitably by Lambert than her fellow students, was also given the "70."

Further, Lambert manipulated grades to suppress Plaintiff's scores.

The scores of "94" assigned to Plaintiff by Ms. Alfred, were based on the withdrawal without grades per the Associate Dean's decision, and Ms. Alfred had been charged (as the teacher of the comparable AP English

course) to determine the appropriate student's grades for the 4th and 5th six weeks.

Plaintiff's mother, Sharon Hendrix, Associate Principal of Central Medical Magnet High School at all times material to this action, reported the unethical practices by Lambert to Chargois on June 24, 2012. Practices designed to retard Plaintiff's academic rank progression in comparison with Nicholas Rhone.

## CAUGHT THE FIRST TIME AND NOT CORRECTED

Chargois ostensibly told Lambert to correct her act, because by law and policy, only the involved teacher could assign or change a student's grade. But Lambert who was in charge of Central, refused. Plaintiff's mother realized, close to the end of the summer and to the beginning of the following school year for 2012-2013 that Lambert had not corrected her daughter's, Plaintiff's grades. Plaintiff's mother wrote a letter to Lambert and reminded her of Chargois' directive.

## CAUGHT THE SECOND AND FORCED TO CORRECT

Caught the second time, after two months had passed without any action, Plaintiff's mother went to the General Dup't. Dr. Carroll Thomas in August, 2012, with her complaint.  Dr. Carroll Thomas ordered Lambert to allow the students,including Plaintiff, to complete assignments to make up the grades.

Lambert complied and corrected Plaintiff's grade.  Lambert and the Defendants did not, however, stop playing with the student's schedules and grades, to advance Nicholas at the expense of Plaintiff.

## CAUGHT THE THIRD TIME BUT NOT CORRECTED

Wilridge (Counselor) and Lowell (Medical Magnet Program Coordinator) worked with Lambert to unethically credit Nicholas Rhone with grades, and deny Plaintiff her academic position .  Plaintiff learned of that she was still being denied her earned grades and resulting class standing. In distress, Plaintiff asked her mother to do something to help her to have a fair chance of achieving the academic ranking merited by her efforts.

Plaintiff's mother again reported Defendants' criminal and unethical acts to Chargois, who this time privately conferred with Lambert. Together,

they decided to stonewall Sharon Hendrix's report.

Chargois refused to act, forcing Plaintiff's mother to unsuccessfully report the matter to the BISD Board of Education.

Plaintiff then reported the matters to the Texas Education Agency ("TEA"). Incomprenhensibly, TEA asked Chargois and Lambert to investigate Plaintiff's/Plaintiff's mother's complaints against them.

Chargois and Lambert happily investigated themselves and unsurprisingly found that they were not culpable of the charges against them, and had done nothing wrong.

**THE FOURTH TIME**

In the wind-down to graduation, as Plaintiff's grade value surpassed Nicholas Rhone's, the scores clearly appeared that Plaintiff was Salutatorian or second in her graduating class of June 2013.

Lambert and her sister, Christine Martin, with Wilridge and Lowell, made one last effort to falsely place Rhone ahead of Plaintiff in the class standing, and illegally altered and lowered Plaintiff's pre-calculus grade causing Nicholas Rhone to be named by Lambert as the 2013 Salutatorian/second in her graduating class of 2013, and receive the

scholarships which usually accompany that position.

In the meantime, Chargois and Lambert, having hurt Plaintiff's Class Standings in order to help Nicholas Rhone, and punish Plaintiff because her mother reported Lambert's alteration of governmental records, ***also*** retaliated against Plaintiff's mother.

Chargois, the new Superintendent of BISD, and Lambert demoted Sharon Hendrix by reducing ***not her salary***, but her status and responsibilities**.**

The day Plaintiff filed this suit, obtained a temporary injunction to prevent Rhone from being named the Salutatorian.

BISD's through its lawyer arranged for the Rhone family to intervene in the suit and BISD hired the Rhone lawyer to also represent the District in a lawsuit it filed by a Board member against the BISD.

Plaintiff dissolved the TRO to permit the graduation exercises to proceed as scheduled despite the fact that Rhone would be wrongly nominated as Salutatorian.

Lambert and Chargois demoted Sharon Hendrix from her position of ASSOCIATE Principal at Central to the position of ASSISTANT Principal at

14

the BISD Alternative School.

## LAMBERT FALSELY ACCUSES PLAINTIFF'S MOTHER OF A CRIME

In pleadings in this case and fronted by legal pleadings, Lambert maliciously stated and maliciously caused to be publicized the false accusation that Plaintiff's mother had altered grades to advance Plaintiff's interests. Even Lambert's lawyer loudly announced to the public in the courthouse hall that C'Brionne or her mother was "a crook!", and not Lambert.

Plaintiff was not only stripped of her earned class standing by the falsification of school records by Chargois, Lambert, Wilridge, and Lowell, but she was effectively robbed of scholarships and institutional choices for her continuing education. Plaintiff was caused emotional anguish causing physical symptoms.

Since Chargois, Lambert, Wilridge, and Lowell have been uncovered in various acts of misconduct and or gross mismanagement. Lambert has been indicted for misconduct while employed by BISD. The BISD Board of Trustees which delegated such immense authority to Chargois and Lambert has been deprived of its power by the Texas Commissioner of Education

and the voters of the BISD, for good or ill, have replaced that Board with another.

Yet, while knowing that Plaintiff was denied her earbed class standing by Defendants' alteration of records and evidence, and thusly deprived of her earned scholarship opportunities, the new BISD Board has steadfastly refused to redress or make Plaintiff whole.

On June 6, 2013 Plaintiff was sannounced by Defendants as ranked third in her class.

## LAWSUIT IS ABOUT THE CONSTITUTION OF THE STATE OF TEXAS

This is an action brought in part against BISD, and the other Defendants pursuant to the teachings of *City of Beaumont v Bouillion*, 896 S.W.2d 143 (Tex. 1995), which says that persons have no legal remedy for governmental violations of the Texas Constitution, but only equitable relief against the governmental entity which injured them.

Consequently, Plaintiff seeks equitable relief-in the form of a declaration by the Court that BISD, and Defendants violated Plaintiff's rights under the Texas Constitution, Article One Sections 3, 8, and 19 to knowingly use fraudulent records to deprive her of an earned status and tangible

benefits.

Further, Defendants' motives were mixed, but all in violation of the Texas Constitution. Specifically, Defendants cheated Plaintiff out of her earned benefit in violation of policies and the law to help Nicholas in order to make up for having cheated his sister out of the same honor the year before.

Then, after Plaintiff and her mother revealed what the Defendants had done to skew the class rankings in 2012 to favor Nicholas, they continued to skew the class rankings in 2013 to cause Nicholas to be awarded the honor and benefits of being Salutatorian/2d in the graduating class of 2013.

Plaintiff was deprived of protected Constitutional interests without due process of law.

Further, Plaintiff requests that Defendants be mandatorily enjoined and ordered to no longer report Plaintiff a ranked "3rd" in the Graduating Class of 2013, but that she is and shall be, ranked in the official records (of the BISD, and or Central Medical Magnet High School) as "2nd" or at the least  Co Salutatorian or co-2nd in the Graduating Class of 2013.  In

additionto the Declaratory Relief sought by Plaintiff, she seeks the following injunctive relief:

REQUEST FOR TEMPORARY INJUNCTION

Applicant asks the Court to set a hearing for this application for temporary injunction, and after hearing, issue the temporary injunction against Defendants, ordering that Chargois, Lambert, and the BISD no longer report in its records that Plaintiff is ranked as "3rd" in the Graduating Class of 2013, but instead shall be, and is, ranked in the official records (of the BISD, and or Central Medical Magnet High School) as "2nd" or co-2nd in the Graduating Class of 2013.

REQUEST FOR PERMANENT INJUNCTION

Applicant asks that after jury trial herein, the Court issue a permanent injunction against Defendants Chargois, Lambert, BISD, and Wilridge to no longer report in BISD's official records that Plaintiff is ranked as "3rd" in the Graduating Class of 2013, but instead shall be, and is, ranked in the official records (of the BISD, and or Central Medical Magnet High School) **as "2nd" or co-2nd in the Graduating Class of 2013.**

**LAWSUIT IS ABOUT THE CONSTITUTION OF THE UNITED STATES**

Pursuant to Title 42 USC, §_1983, Plaintiff seeks to vindicate
her rights as secured by the First, and the Fourteenth Amendments to the
United States Constitution.

Plaintiff's First Amendment Right was to be free from retaliation
because she caused the misdeeds of Defendants to be reported to the TEA.

Plaintiff's Fourteenth right is based on the use by Defendants of
fabricated or altered student grades to deprive Plaintiff of a published class
ranking system which had been adopted by the BISD Board of Trustees.
That class ranking system at all times material to this cause of action, is
incorporated herein as Exhibit A.,and states,   ***"Rank is determined by grades made during the freshman, sophomore, and junior years. In addition to the first semester <EXHIBIT A and through the fifth six weeks of the senior year (grades nine,***

*10, 11, 12). All subjects in which a numerical grade is given shall be used in evaluating right. Courses taken for high school credit in middle school will count toward graduation requirements and rank in class. For the purpose of determining rank in class, as well as for determining honor graduates, the following great point scale will be used:"* Additional BISD  policies,applicable at all times material to the facts giving rise to this lawsuit,are attached hereto as Exhibit B. governing the selection of Class Ranks of Valedictorian and Salutatorian are Stated as follows: "**A. Students desiring to reach any of the levels named should take Advanced Placement/Honors courses in the earliest year possible. Course planning should begin as the student enters the eighth grade. Students and parents are**



<EXHIBIT B

**encouraged to consult with school counselors and to attend**

*any orientation meetings. B. the student with the highest grade point average in each high school shall be named valedictorian. The student with the second highest grade point average shall be named salutatorian. The grade point average for these two shall not be limited to the hundredth place. If there is a tie, those tied received the same honor. "*

Defendants not only altered the student grades to favor Nicholas over Plaintiff, in so doing they altered the policy of the BISD and d eprived Plaintiff of her constitutional rights to due process.

PRAYER

Plaintiff prays that after a jury trial herein, Defendant be declared to have violated Plaintiff's Constitutional Rights as secured to her by the Texas Constitution, Article One, Sections 3, 3a, 8, and 19, and an injunction entered whereby BISD no longer report in BISD's official records that Plaintiff is ranked as "3rd" in the Graduating Class of 2013, but instead shall be, and is, ranked in the official records (of the BISD, and or Central Medical Magnet High School) as **"2nd" in the Graduating Class of 2013, the Salutatorian of that class.**

Further, Plaintiff prays that after a jury trial herein**, as against**

**respective Defendants herein,** the court award to Plaintiff herein damages for compensatory damages  including damages for both economic and non-economic damages, as well as her reasonable and necessary attorney's fees and costs to which she is entitled under Texas Civil Practice and Remedies § 37.009, and or Title 42 USC, § 1983.

Respectfully submitted,
WATTS & COMPANY LAWYERS, Ltd.

*/s/ Larry Watts*
Larry Watts
SBN 20981000
P.O. Box 2214
Missouri City, Texas 77459
Phone: (281) 4311500
Fax: (877) 797-4055
Wattstrial@gmail.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Larry Watts, certify that a true and correct copy of this document has been served by fax on opposing counsel on this the 1st  day of June 2015.

*/S/ Larry Watts*